# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JAY HEWITT,**

<strong>Plaintiff,</strong>

-vs-                                                 **Case No.  6:07-cv-140-Orl-UAM**

**COMMISSIONER OF SOCIAL
SECURITY,**

<strong>Defendant.</strong>

_____

# MEMORANDUM OF DECISION

Plaintiff Jay D. Hewitt ["Hewitt"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for disability insurance benefits.  For the reasons set forth below, the Commissioner's decision is **REVERSED AND REMANDED**.

## I.    PROCEDURAL HISTORY

On September 20, 2004, Hewitt filed a claim for disability insurance benefits, claiming disability as of August 27, 2004.  R. 52-54.[1]  On February 14, 2006, the Honorable Jimmy N. Coffman, Administrative Law Judge ["ALJ"], held a nine-minute hearing on Hewitt's claim in Titusville, Florida.  R. 197 - 204.  Attorney Krista Rush represented Hewitt at the hearing.  R. 197. The ALJ heard testimony from Hewitt only.

---

[1] The Court notes that the administrative record contains a transcript of a hearing before an ALJ conducted on February 22, 2004, related to an application for disability insurance benefits with an alleged onset date of August 27, 2001. R. 173.  It does not appear from the record that this application is part of the current appeal.

On July 7, 2006, the ALJ issued a decision that Hewitt was not disabled and not entitled to benefits.  R. 8-19.  Following a review of the medical and other record evidence, the ALJ found that Hewitt could not perform any of his past relevant work.  R. 18, Finding 7.  The ALJ found that Hewitt nevertheless retained the residual functional capacity ["RFC"] to perform the full range of the physical exertional requirements of light work.  R. 19, Finding 11.  Applying the Medical-Vocational Guidelines ("the grids"), the ALJ concluded that Hewitt was not disabled.  R. 19, Finding 12.

The Appeals Council denied review on January 11, 2007.  R. 4-6.  On January 29, 2007, Hewitt timely appealed the Appeals Council's decision to the United States District Court.  Docket No. 1.  On June 11, 2007, Hewitt filed in this Court a memorandum of law in support of his appeal.  Docket No. 10.  On August 9, 2007, the Commissioner filed a memorandum in support of his decision that Hewitt was not disabled.  Docket No. 12.  The appeal is ripe for determination.

## II.   THE PARTIES' POSITIONS

Hewitt assigns three errors to the Commissioner.  First, he claims that the Commissioner erred in failing to give controlling weight to Hewitt's treating physician, Dr. Maxwell.  Second, Hewitt claims that substantial evidence does not support the Commissioner's decision that he has the RFC for light work.  Finally, Hewitt argues that the Commissioner erred in applying the grids and failing to obtain testimony from a vocational expert ("VE") in light of Hewitt's non-exertional impairment of pain.

The Commissioner argues that substantial evidence supports his decision to deny disability.  First, the Commissioner argues that the ALJ properly discounted Dr. Maxwell's opinion due to the short treatment period. Second, the Commissioner argues that the ALJ properly credited the opinions

-2-

of other physicians and those opinions provided substantial evidence supporting the RFC determination. Third, the Commissioner argues that the ALJ properly found that Hewitt's pain did not result in severe functional limitations and that his reliance on the grids was permissible.

## III.   **THE STANDARD OF REVIEW**

### A.   **AFFIRMANCE**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B.      REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.   42 U.S.C. § 405(g)(Sentence Four).   The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).  A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C.      REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of  42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.

-4-

*Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is

a reasonable possibility that it would change the administrative result; and 3.) there is good cause for

failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090 - 92; *Cannon*

*v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir.

1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also, Keeton v. Dept. of Health &*

*Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner

if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a

sentence-six remand, the parties must return to the district court after remand to file modified findings

of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does

not enter a final judgment until after the completion of remand proceedings.[2] *Id.*

## V.    APPLICATION AND ANALYSIS

### A.    THE FACTS

Hewitt was born in 1955, and was 50 years old on the day of hearing. R. 199. Hewitt has a

high school education, and has past relevant work as sheet metal mechanic at Kodak and home

remodeling. R 200.

An MRI of the Hewitt's lumbar spine dated December 19, 2001, showed a small disc

protrusion at L5-S1 abutting the left S1 nerve root, degenerative changes at L1-2, L4-5 and L5-S1,

---

[2]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

mild spinal stenosis at L4-5, and mild/moderate neural foraminal narrowing at L4-5 and L5-S1.  R. 95-96.

Hewitt was treated in 2002 and 2003 for low back pain by Vladimir Gaspar, M.D. of Lake Plains Medical Associates.  R. 101-123.  On January 25, 2002, Hewitt reported low back pain with some numbness in his left foot.  R. 123.  The pain primarily occurred when he went up stairs or walked a long way.  R. 115.  Dr. Gaspar gave Hewitt some samples of Vioxx.  R. 115; 119.  At a follow-up visit on March 8, 2002, Dr. Gaspar noted that Hewitt experienced low back pain, mostly after physical activity, sometimes after minimal activity.  R. 113.  The pain occasionally is mild to moderate, and occasionally severe and incapacitating.  *Id*.  The record refers to Hewitt consulting with Dr. Maxwell on February 15, who opined that Hewitt's MRI did not indicate surgical intervention.  *Id*.  Dr. Gaspar prescribed physical therapy, continuation of Vioxx, and Tylenol 1650 mg or Vicodin as needed for severe pain.  *Id*.

On April 29, 2002, Hewitt reported that physical therapy aggravated his symptoms.  R. 112.  Vioxx provided partial alleviation, but Hewitt complained of constant low back discomfort and pain that was occasionally significant and prevented him from performing his job.  *Id*.  Examination revealed restricted motion in the lumbosacral area, and straight leg elevation test was positive on the left and borderline positive on the right.  *Id*.  Dr. Gaspar diagnosed continuous low back pain related to degenerative joint disease, mild spinal stenosis at L4-5, protrusion at L4-5 and protrusion at L5-S1.  *Id*.  Dr. Gaspar increased Hewitt's dosage of Vicodin, continued him on Vioxx and added Soma and Neurontin.  *Id*.

On March 21, 2003, Dr. Gaspar noted that Hewitt was ambulating slightly cautiously. R. 107. Straight leg elevation test was positive on the left side. Dr. Gaspar assessed low back pain clinically unchanged with episodes of quite incapacitating pain, alternating with mild discomfort. *Id*. He was continued on his medication. *Id*.

At a follow-up visit on October 24, 2003, Hewitt reported that Vioxx was effective, although he still experienced occasional back pain that was incapcitating. R. 105. His motion was unrestricted and straight leg test was borderline. *Id*. He status was stable. *Id*.

On September 15, 2004, Hewitt underwent nerve conduction studies of the lower extremities performed by neurologist David Marzulo, D.O. R. 132-133. The study was abnormal, with evidence suggesting chronic S1 nerve root dysfunction and subtle evidence of chronic nerve root dysfunction at the left L5 segment as well. *Id*.

On October 1, 2004, Dr. Gaspar again evaluated Hewitt and noted no significant changes, but that there was more spastic paravertebral muscles in the lumbar sacral area. R. 102. Hewitt also displayed restricted motion and a positive straight leg raise on the left. *Id*. There were no significant neurological deficits in terms of hypoesthesia or dysesthesia of the lower leg. *Id*. Dr. Gaspar continued Hewitt on the same medications. *Id*. Hewitt reported that he did not need the Vicodin regularly, but only when the pain is more severe. *Id*. Hewitt was referred to a pain clinic for assessment and possible treatment. R. 101.

On October 28, 2004, James Maxwell, M.D. examined Hewitt. R. 124-125. Hewitt reported that he took Vicodin on a daily basis for relief. R. 124. On examination, Hewitt displayed 3/5 dorsiflexion weakness of left great toe sitting in a chair, mild dorsiflexion weakness of the left foot

on heel walk and mild left plantar flexion weakness on tiptoe walk. *Id.* Otherwise, he had no paralytic weakness of the legs and his reflexes were symmetric at the knees and ankles. *Id*. Dr. Maxwell opined that Hewitt's chronic low back and left leg pain was secondary to nerve damage from a herniated lumbar disc evidenced on MRI. *Id*. Hewitt was not a surgical candidate. *Id*. Dr. Maxwell opined that Hewitt was unable to lift, push or pull more than 10 pounds, could not engage in prolonged standing or walking and required frequent position changes. R. 125. Dr. Maxwell also noted that Hewitt could only work a job which would allow "his continued need for Vicodin pain medication." *Id.*

On November 6, 2004, Hewitt underwent a consultive examination performed by Ramon Medalle, M.D. R. 126-130. Hewitt did not appear in acute distress, although his gait was abnormal and slightly antalgic with favor to the left leg. R. 127. Sensory exam revealed diminished pinprick and light touch sensation, mostly in the anterior part of the left lower leg and the entire left foot, with inconsistent findings. R. 129. Dr. Medalle noted Hewitt's half-hearted efforts to perform various physical movements. R. 127-29. Dr. Medalle opined that Hewitt was moderately limited in activities requiring prolonged sitting and standing, bending, and lifting because of diskogenic disorder of the lumbar spine. R. 129.

On December 14, 2004, state agency evaluator V. Yu, M.D. completed an Electronic Request for Medical Advice form. R. 135-36. Dr. Yu opined that Hewitt had an RFC to perform light work, that he could lift up to 20 pounds, and could ambulate 6 hours in an 8-hour workday. R. 135.[3]

---

[3] Dr. Yu's report states that he was "unable to retrieve file." It is unclear what records were available to Dr. Yu for his evaluation. R. 135.

On December 21, 2004, state agency evaluator Catherine Johengen, D.A. II, completed a Physical RFC Assessment form. R. 139-144. Dr. Johengen opined that Hewitt could occasionally lift/carry 20 pounds , frequently lift/carry 10 pounds, stand/walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, and unlimited push/pull ability. R. 140.[4]

Hewitt was also treated by Anja Bottler, M.D. of Lake Plains Medical Group between December 10, 2004 to February 7, 2005. R. 147-152. On January 7, 2005, Dr. Bottler noted Hewitt appeared depressed due to his inability to find work within the limitations recommended by Dr. Maxwell. R. 149. Dr. Bottler also noted that Hewitt walked with a limp, favoring his left leg, and that he had significant trouble getting up on the exam chair. *Id.* Dr. Bottler added a prescription for a Lidoderm patch for pain in addition to Vicodin, and referred him to Dr. Singh for pain management. R. 149-50.

On March 16, 2005, Hewitt was examined by Amrit Singh, M.D. R. 145-146. Examination revealed decreased lumbar range of motion in all directions with almost no extension. R. 145. Hewitt displayed difficulty walking on heels and toes, especially on the left, and was unsteady performing Trendelenburg's test on the left. *Id.* Straight leg raise was positive on the left at 45 degrees. *Id.* There was decreased bulk of the left extensor digitorum brevis as compared to the right, and weakness for great toe extension and ankle dorsiflexion on the left side, as well as decreased sensation over both feet. R. 146. Hewitt displayed marked tenderness over the mid and lower lumbar spine, lumbosacral junction and sacroiliac joint on the left. *Id.* Dr. Singh prescribed Prednisone and Naproxen, and

---

[4] The Court notes that Dr. Johengen found the opinion of "NP [nurse practitioner] Maxwell" "is not an acceptable medical source and her opinion cannot be considered." R. 143. Although nurse practitioner Mary E. Maxwell dictated the report for Dr. James T. Maxwell, it is clear that the doctor examined Hewitt and the report reflects the doctor's opinions, not those of his nurse practitioner. R. 124-25.

increased the dosage of Neurontin. *Id.* He also prescribed exercises to improve strength and flexibility. *Id.*

On December 15, 2005, Damani Hosey, M.D. signed Hewitt's application for a disabled person parking permit, certifying that Hewitt has a "severe limitation in a person's ability to walk due to an arthritic, neurological, or orthopedic condition." R. 87.

On January 23,2006, Hewitt was seen by Damani A. Hosey, M.D., for evaluation of pain. R. 153-55. The purpose of the examination was to obtain a second opinion regarding neurosurgical options. R. 155. On physical examination, Hewitt was in no acute distress. R. 155. There was tenderness of the lumbar spine. *Id.* Straight leg raising test was positive. Id. There was slight diminished sensation of the left leg. *Id.* Hewitt's deep tendon reflexes were normal. *Id.*

On March 2,2006, Hewitt was seen by Timothy D. Carter, M.D., for a third opinion regarding his lower back pain and nerve damage. R. 158-61. Hewitt's motor strength examination was normal in the upper extremities. R. 161. There was limited motor strength examination of the lower extremities due to pain, but he obtain 5/5 strength flexion bilaterally as well as hip abduction and adduction. *Id.* There was diminished sensation was diminished in the left lower extremity, but essentially normal throughout. *Id.* Hewitt walked with a slight limp with his left leg. *Id.* He experienced difficulty standing on his toes and heels on the left. *Id.* He was stable with Romberg testing. *Id.*

**B.   THE ANALYSIS**

Hewitt argues that the ALJ erred in failing to accord substantial weight to the opinion of Dr. Maxwell, a treating physician. Hewitt argues that Dr. Maxwell's opinion was supported by the

record and mirrors the findings of other physicians of record.  The ALJ stated that he had considered

Dr. Maxwell's opinion but found that Dr. Maxwell had "not treated the claimant long enough to have

obtained a longitudinal picture of the claimant's impairments."  R. 16.  The ALJ did not state what

weight was given to Dr. Maxwell's opinion, but because the ALJ gave "considerable weight" to the

opinions of the state agency physicians and consulting physician Dr. Medalle, it is clear that the ALJ

gave Dr. Maxwell's opinion less weight than he gave to these other doctors' opinions.  *Id*.

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to

the opinion, diagnosis and medical evidence of a treating physician.  *See MacGregor v. Bowen*, 786

F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997);

*Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991);  *Sabo v. Comm'r of Social Security*,  955

F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on

the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical

and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the

record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work

if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d

580 (ALJ properly discounted treating physician's report where the physician was unsure of the

accuracy of his findings and statements).  Similarly, the ALJ may reject any medical opinion if the

evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Where

a treating physician has merely made conclusory statements, the ALJ may afford them such weight

as is supported by clinical or laboratory findings and other consistent evidence of a claimant's

impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

      When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527(d)(2).

      The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because those ultimate determinations are for the Commissioner. 20 C.F.R. § 404.1527(e).

      The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Without the ALJ making the necessary findings, it is impossible for a reviewing

court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

Initially, the Court notes that the ALJ did not state with particularity the weight accorded to Dr. Maxwell's opinion. Further, the ALJ's finding that Hewitt saw Dr. Maxwell only one time and, therefore, Dr. Maxwell lacked a longitudinal picture of Hewitt's condition is not supported by the record. Hewitt saw Dr. Maxwell on two occasions, first on February 15, 2002 (R. 124), and again on October 28, 2004. R. 113, 124.

The regulations provide that unless a treating source's opinion is given controlling weight, the Commissioner will "consider all of the following factors in deciding the weight to be given any medical opinion:" the examining relationship; the treatment relationship, including the length, frequency, nature and extent of treatment; whether the opinion supported by medical signs and laboratory findings; consistency with the record as a whole; specialization; and any other factors brought to the Commissioner's attention. 20 C.F.R. § 404.1527(d).

The only reason given by the ALJ in his decision for not giving controlling weight to Dr. Maxwell's opinion was the length of the relationship, which the ALJ mistakenly stated consisted of a single visit. It appears the ALJ did not consider any of the other factors that the Commissioner's regulations required to be considered in determining what weight to accord to Dr. Maxwell's opinion. The ALJ's decision, therefore, fails to set forth good cause for failing to accord controlling weight to the opinion of Dr. Maxwell. The Court, therefore, reverses and remands the case to the Commissioner for further consideration pursuant to Sentence Four. Because the Court remands the case for further consideration, it is unnecessary to address the parties' arguments regarding whether the RFC finding

was based on substantial evidence.  Further, because of the remand, whether the ALJ properly applied

the grids is now a moot issue.

## VI.     CONCLUSION

For the reasons stated above, the decision of the Commissioner is **reversed and remanded**

**pursuant to Sentence Four**.  The Court directs the Clerk to enter judgment in Plaintiff's favor and

to close the case.

**DONE AND ORDERED** in Orlando, Florida on December 14, 2007.

*Donald P. Dietrich*

DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Richard V. Blake, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Jimmy N. Coffman
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL            32817